**No. 59733.**—Mercantile Stores Co., Inc. *v.* United States, protest 249095–K (New York).

FORD, Judge: The suit listed above challenges the action of the collector of customs in classifying certain imported merchandise as ornamented flax articles and levying duty thereon at the rate of 90 per centum ad valorem under paragraph 1529 (a) of the Tariff Act of 1930. Plaintiff claims said merchandise to be properly dutiable at 65 per centum ad valorem under paragraph 1529 (a) of said act, as modified by the Torquay Protocol to the General Agreement on

Tariffs and Trade, 86 Treas. Dec. 121, T. D. 52739, as articles, except wearing apparel, in part of machine-made lace.

The facts in this case are not in dispute. The merchandise consists of linen tablecloths and napkins with hand embroidery, and they had embellishments of machine-made lace on the edges. Defendant concedes that the lace of which these articles are in part is machine-made lace, but contends that, because in some instances this machine-made lace is loosely attached to the tablecloth and to the napkins, "* * * that it must be such an article as is a commercial reality, and not a customs evasion. The lace in the case at bar was merely attached for the purpose of avoiding the payment of proper duties."

In support of the above contention, counsel for defendant refers us to and quotes from the case of *United States* v. *Citroen*, 223 U. S. 407. In that case, Mr. Justice Hughes, speaking for the Court, said:

First. The rule is well established that "in order to produce uniformity in the imposition of duties, the dutiable classification of articles imported must be ascertained by an examination of the imported article itself, in the condition in which it is imported." *Worthington* v. *Robbins*, 139 U. S. 337, 341, 35 L. ed. 181, 182, 11 Sup. Ct. Rep. 581; *Dwight* v. *Merritt*, 140 U. S. 213, 219, 35 L. ed. 450, 452, 11 Sup. Ct. Rep. 768; *United States* v. *Schoverling*, 146 U. S. 76, 82, 36 L. ed. 893, 895, 13 Sup. Ct. Rep. 24; *United States* v. *Irwin* (C. C. A. 2d C.) 24 C. C. A. 349, 45 U. S. Appls. 746, 78 Fed. 799, 802. This, of course, does not mean that a prescribed rate of duty can be escaped by resort to disguise or artifice. When it is found that the article imported is in fact the article described in a particular paragraph of the tariff act, an effort to make it appear otherwise is simply a fraud on the revenue, and cannot be permitted to succeed. *Falk* v. *Robertson*, 137 U. S. 225, 232, 34 L. ed. 645, 647, 11 Sup. Ct. Rep. 41. But when the article imported is not the article described as dutiable at a specified rate, it does not become dutiable under the description because it has been manufactured or prepared for the express purpose of being imported at a lower rate. *Merritt* v. *Welsh*, 104 U. S. 694, 704, 26 L. ed. 896, 899; *Seeberger* v. *Farwell*, 139 U. S. 608, 611, 35 L. ed. 297, 298, 11 Sup. Ct. Rep. 650. "So long as no deception is practised, so long as the goods are truly invoiced and freely and honestly exposed to the officers of customs for their examination, no fraud is committed, no penalty is incurred." *Merritt* v. *Welsh, supra.* The inquiry must be—Does the article, as imported, fall within the description sought to be applied?

In the case of *United States* v. *Levitt et al.*, 26 Fed. Cas., page 919, the defendants were lead manufacturers in Brooklyn, N. Y., who had imported a large quantity of lead in the form of busts. The act of 1832 provided that "all busts of marble, metal, or plaster shall be imported into the United States free of duty." Daniel Webster successfully defended a suit against the defendants for duties believed to have been evaded. "The jury, after some deliberation, gave it as their opinion that the articles in question were leaden busts and consequently free from duty." Under the act of 1832, lead was dutiable at 3 cents per pound.

In *Michaelian & Kohlberg, Inc.* v. *United States*, 22 C. C. P. A. (Customs) 551, T. D. 47554, in dealing with the question of whether or not the embroidery of a crude dragon on one corner of a rug was a disguise or artifice, which would subject the importer to a penalty for evading customs duties, the Court of Customs and Patent Appeals said:

Generally speaking, the rule is well settled, having been often stated and approved by various courts, that an importer has the right to fashion his merchandise so that it shall be assessed with duty at the lowest rate. [Citing authorities.]

After quoting several passages from the *Citroen* case, *supra*, our appellate court closed its quotations from that case with the following:

We are not concerned with the reason for the distinction; it is enough that Congress made it.

So, here we are not concerned with the reason for the inclusion, in paragraph 1529 (a) of the Tariff Act of 1930, *supra*, of the broad language which brings embroidered articles "to whatever use applied" within its terms, even though specifically named elsewhere in the act; it is sufficient that Congress did it.

We may add that insofar as the evidence in the case at bar is concerned, we find nothing to indicate that the importer's motive was that which the majority of the trial court seem to have surmised, even should it be conceded that the *classification of the merchandise* should be affected or determined by such motive had it existed.

Upon the whole record in the case, and in the light of the authorities, we feel that the judgment was erroneous and the same is *reversed*, and the cause *remanded* for further proceedings not inconsistent herewith. [Italics by the appellate court.]

Further on the question of so manufacturing and importing merchandise as to evade the payment of legal customs duties, the case of *United States* v. *Schoverling*, 146 U. S. 76, is in point. In that case, certain finished gunstocks, with locks and mountings, were imported into the port of New York. Upon a different ship and at a different time, there was also imported an equal number of barrels to be used in making the gunstocks, with locks and mountings, into completed guns. The collector levied a duty of $1.50 each, plus 35 per centum ad valorem, under paragraph 170 of the Tariff Act of 1890, as double-barreled, sporting, breech-loading shotguns, valued at not more than $6 each. The importers claimed the merchandise to be properly dutiable as manufactures of metal, not specially provided for, under paragraph 215 of the Tariff Act of 1890. In disposing of the questions presented, the Supreme Court said:

The board of general appraisers took the testimony of Mr. Daly, one of the importing firm, on December 19, 1890, and it is set forth in the margin. In its report to the collector, signed by all three members, it is said that if the importation was simply one of gunstocks, without the gun barrels required to make a complete firearm, and the case rested there, the articles could not be regarded as completed guns, so as to be dutiable under paragraph 170; that the testimony of Daly disclosed the facts that the firm of Schoverling, Daly & Gales had imported the gunstocks in question, and had made an agreement with another firm by which the latter were to order the barrels, with the mutual expectation that the stocks and barrels, after arriving at New York, were to be put together so as to make complete guns; that Schoverling was a member of both firms thus colluding together; that such a mode of evading the payment of duties could not be tolerated; and that the decision of the collector was affirmed.

  \*   \*   \*   \*   \*   \*   \*

\* \* \* The case was argued before the circuit court, held by Judge Lacombe which entered an order, on March 20, 1891, reversing and setting aside the decision of the collector and that of the board of general appraisers, and adjudging that the merchandise should have been classified and assessed with duty at the rate of 45 per cent ad valorem, under paragraph 215 of the Act, as "manufactures, articles, or wares not specially enumerated or provided for in this Act, composed \* \* \* in part of iron or steel."

  \*   \*   \*   \*   \*   \*   \*

We are of opinion that the judgment of the circuit court must be affirmed. The contention on the part of the United States is that the transaction, as conducted, was a fraud upon the statute. But the question was solely as to the gunstocks. *Sampson* v. *Peaslee*, 61 U. S. 20 How. 571 [15:1022]. There is not in the statute, in paragraph 170, or elsewhere, any imposition of duty on parts of breech-loading shotguns, except the provision in paragraph 215. There is no duty otherwise imposed on materials for such guns.

  \*   \*   \*   \*   \*   \*   \*

\* \* \* In the present case, the dutiable classification of the gunstocks imported must be ascertained by an examination of them in the condition in which they are imported. *Worthington* v. *Robbins*, 139 U. S. 337 [35:181].

So, in the instant case, the dutiable classification of the tablecloths and napkins must be ascertained by an examination of them in the condition in which they are

imported. As imported, these tablecloths and napkins were in part of machine-made lace, and this brings them squarely within the provision in said trade agreement for articles in part of machine-made lace. And this is true whether the said lace is firmly or loosely attached to the tablecloths and napkins.

The involved merchandise is, therefore, held to be properly dutiable at 65 per centum ad valorem under paragraph 1529 (a) of the Tariff Act of 1930, as modified, *supra*, as alleged by the plaintiff.

To the extent indicated, the specified claim in this suit is sustained; in all other respects and as to all other merchandise, all the claims are overruled. Judgment will be rendered accordingly.